JOSEPH P. RUSSONIELLO
United States Attorney
CHARLES O'CONNOR
Assistant United States Attorney
450 Golden Gate Ave., Box 36055
San Francisco, CA 94102
Telephone: (415) 536-6967
Facsimile: (415) 436-6748

RONALD J. TENPAS
Assistant Attorney General
BARCLAY T. SAMFORD (NMBN 12323)
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Div.
1961 Stout St., 8th Floor
Denver, CO 80294
Telephone: (303) 844-1475
Facsimile: (303) 844-1350

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TRI-VALLEY CARES, MARYLIA KELLEY, JANIS KATE TURNER, and JEDIDJAH DE VRIES, ) ) ) ) Plaintiffs, ) ) v. ) ) UNITED STATES DEPARTMENT OF ENERGY, ) NATIONAL NUCLEAR SECURITY ) ADMINISTRATION, LAWRENCE LIVERMORE ) NATIONAL LABORATORY, ) ) Defendants. ) | Case No. 08-cv-1372-SBA

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF** |

## I.     INTRODUCTION

On June 6, 2008, Plaintiffs asked the Court to take judicial notice of a May 9, 2008, National Nuclear Security Administration ("NNSA") press release which noted that a routine assessment of security programs at Lawrence Livermore National Laboratory ("LLNL") had identified areas requiring corrective action.  Dkt. No. 40.  The Court properly denied Plaintiffs' request.  Dkt. No. 41.[1]/   Undeterred by the Court's directive that it "does not require any supplemental pleadings," id., Plaintiffs have repackaged their request for judicial notice as a motion for leave to file a supplemental brief, and now ask the Court to accept the same press release, as well as a new declaration and over 100 pages of additional exhibits.  Dkt. No. 42. Plaintiffs' motion should be denied.

Plaintiffs' proposed supplemental brief improperly asks the Court to consider, in ruling on Plaintiffs' pending motion for a preliminary injunction, a legal claim not presented in Plaintiffs' complaint.  Plaintiffs' supplemental brief asserts that the Department of Energy ("DOE") has violated the National Environmental Policy Act ("NEPA") by failing to prepare a supplemental Environmental Assessment ("EA") to address a security assessment conducted at LLNL in March-April 2008 by the DOE's Office of Independent Oversight.  This claim obviously is not present in the Plaintiffs' complaint, which was filed in March 2008, and this Court cannot base its ruling on Plaintiffs' pending motion for a preliminary injunction on a legal claim not raised in the complaint.  Further, DOE has considered the security assessment and reached the reasoned conclusion that it does not raise new information or changed circumstances which would require preparation of a supplemental EA.  Finally, if the Court deems the supplemental brief to relate to the claims already before the Court, it must strike the

---

[1]/        In addition to the reasons identified by the Court, the Ninth Circuit has made clear that in context of judicial review of administrative actions judicial notice of documents outside the record is inappropriate.  See Rybachek v. EPA, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990) (refusing to take judicial notice of documents that were not contained in administrative record); Fisher v. INS 79 F.3d 955, 963 (9th Cir. 1996) ("To the extent our prior decision may be interpreted as authorizing us to take judicial notice of information not part of the administrative record . . . they are overruled as inconsistent with the Act and prior precedent.").

1    accompanying declaration and exhibits, which suffer numerous evidentiary deficiencies.

2    **II.    ARGUMENT**

3         **A.    Plaintiffs May Not Seek a Preliminary Injunction Based on a Claim Not
              Raised in Their Complaint.**

4

5         Plaintiffs assert that their proposed supplemental brief is filed in support of their pending

6    motion for a preliminary injunction.  Plaintiffs' proposed supplemental brief, however, does not

7    support any of the existing claims in their complaint, and instead attempts to proffer an entirely

8    new claim.  Because this Court may not award injunctive relief on the basis of a claim not

9    included in a complaint, Plaintiffs' motion for leave to file a supplemental brief must be denied.

10        To obtain a preliminary injunction, a plaintiff must demonstrate irreparable harm, and a

11   chance of success on the merits of its legal claims.  Stuhlbarg Int'l Sales Co., Inc. v. John D.

12   Brush and Co., Inc., 240 F.3d 832, 839-40 (9th Cir. 2001).  If a legal claim is not raised in a

13   plaintiff's complaint, it will not be reviewed on the merits, and it would be inappropriate to

14   review the claim's "chance of success" in the context of a preliminary injunction.  See, e.g.,

15   Stewart v. United States INS, 762 F.2d 193, 199 (2d Cir.1985) (finding district court erred in

16   issuing preliminary injunction based on claim not raised in complaint); First Health Group Corp.

17   v. Nat'l Prescription Adm'rs, Inc., 155 F. Supp. 2d 194 (M.D. Pa. 2001) ("This Court will not

18   award a preliminary injunction on grounds not raised in the complaint, as there is, by virtue of

19   the absence of the issue from the complaint, no likelihood of success on the merits.").

20        Here, Plaintiffs assert that their proposed supplemental brief provides information

21   "relevant" to their third claim for relief, which alleges DOE was required to supplement the EA

22   to address new information.  The complaint identifies the new information allegedly not

23   considered as: an incident involving the shipment of anthrax between labs (Dkt. No. 1 ¶¶ 57-62),

24   reports of accidents at BSL-3 and BSL-4 facilities in the U.S. (id. at ¶¶ 63-64), and a

25   Government Accountability Office Report (id. at ¶¶ 65-66).  Plaintiffs' complaint does not

26   include a claim for failure to supplement the BSL-3 EA to address the recent security

27   assessment.  Nor could it, because the security assessment had not taken place at the time the

28   complaint was filed.  Even under the liberal rules of notice pleading, Plaintiffs' third claim does

not operate as an open door through which they may continually bring before the Court new allegations based on events which had not occurred at the time the complaint was filed.  If Plaintiffs believe a claim lies for failure to supplement the EA for LLNL BSL-3 on the basis of the recent security assessment, the proper course is to move to amend their complaint to add such a claim.

Defendants note that a claim that DOE has violated NEPA for failure to prepare a supplement to the EA for the LLNL BSL-3 facility based on the recent security assessment is without merit.  DOE has considered the recent security assessment and determined that it does not constitute new information or changed circumstances requiring the preparation of a supplemental EA or an EIS for the LLNL BSL-3 facility.  See Exh. 1 (Review of the Relevance of the Office of Independent Oversight Security Assessment).  See also Idaho Sporting Cong. v. Alexander, 222 F.3d 562, 566 (9th Cir. 2000) (recognizing the need for agencies to use a variety of "'non-NEPA' environmental evaluation procedures . . . for the purpose of determining whether new information or changed circumstances require preparation of a supplemental EA or EIS").  DOE's determination that a supplemental EA is not needed is well reasoned, and would be upheld if challenged.  See Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 376 (1989) (holding that the question of whether information rises to the level of requiring a supplemental NEPA analysis "is a classic example of a factual dispute the resolution of which implicates substantial agency expertise").[2]/

**B.    Even if the Court Determines that the Plaintiffs' Supplemental Brief Relates**

_____

[2]/    Plaintiffs' suggestion that their supplemental brief ought to considered in support of their motion for a preliminary injunction is further undercut by that fact that an agency is not required to stop ongoing operations authorized under an existing NEPA document while considering new information – nor for that matter while preparing a supplemental NEPA document. See ONRC Action v. BLM, 150 F.3d 1132, 1140 (9th Cir. 1998) (holding the BLM could continue to operate under existing NEPA and program plans while preparing a new NEPA analysis that would "likely" lead to revision of the program plan).  This rule comports with commonsense: it would be debilitating to on-going agency programs if an agency were required to stop operations every time allegedly significant new information was brought to its attention.  Here, operations at the BSL-3 facility began on January 25, 2008, and will continue while the Agency considers new information that may arise during the operational life of the facility.

1

**to a Claim Already Before the Court, the Declaration of Peter Stockton, all Exhibits Thereto, and all Arguments Based Thereon Must be Stricken.**

2

3          In support of their supplemental brief, Plaintiffs submit a new declaration and more than

4     100 pages of exhibits.  For the reasons set forth below, even if the Court accepts Plaintiffs'

5     supplemental brief, it should strike the declaration and the exhibits, and all arguments in the brief

6     based thereon.

7          **1.     The Declaration of Peter Stockton is Inadmissible and Should Be Stricken.**

8          Plaintiffs submit the declaration of Peter Stockton for the apparent purpose of reporting

9     the results of the security assessment conducted in March-April 2008 by the DOE's Office of

10    Health, Safety and Security.  The declaration is not admissible for that purpose.

11         The rules of this Court provide that an affidavit "may contain only facts, must conform as

12    much as possible to the requirements of FRCivP 56(e), and must avoid conclusions and

13    argument."  Civil L.R. 7-5(b).  Rule 56(e) provides that "[a] supporting or opposing affidavit

14    must be made on personal knowledge, set out facts that would be admissible in evidence, and

15    show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).  See

16    also Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001) (noting it is an abuse of

17    discretion to consider affidavits that are not made on personal knowledge, since such affidavits

18    do not set forth facts that would be admissible in evidence).

19         Contrary to Rule 56(e), Mr. Stockton's declaration fails to establish that he has personal

20    knowledge of the events about which he testifies.  This omission is not a mere deficiency in

21    drafting:  there is serious reason to doubt that Mr. Stockton, who is not a DOE employee and

22    who was not involved in the security assessment, could have competent personal knowledge of

23    the results of the assessment.  At the time of his declaration, only a classified draft report on the

24    security assessment had been produced, and that document was not made available to Mr.

25    Stockton or his organization.  See Declaration of Phillip E. Hill (attached hereto as Exhibit 2) at

26    ¶ 4.

27         Rather than personal knowledge, Mr. Stockton bases his testimony on the content of

28    "POGO's investigation."  See, e.g., Plfs' Exh. 23 at ¶¶ 4, 6, 8. Tellingly, Mr. Stockton neither

1    attaches a copy of  "POGO's investigation," or explains how it was conducted.  Testimony

2    attempting to convey to the Court the content of a document not before the Court is hearsay, and

3    is inadmissible.  Fed. R. Evid. 801(a).

4         Because Mr. Stockton fails to establish that his testimony is made on the basis of his

5    personal knowledge and because it is in large part inadmissible hearsay, Mr. Stockton's

6    declaration should be stricken if the Court determines to accept Plaintiffs' supplemental brief.

7               **2.     The Attachments to Mr. Stockton's Declaration are Inadmissible and
                         Should be Stricken.**

8
9         While Plaintiffs omit to attach "POGO's investigation" of the recent security assessment,

10   they do attach to Mr. Stockton's declaration over 100 pages of other materials.  As set forth

11   below, these attachments are improper and should be stricken even if the Court accepts

12   Plaintiffs' supplemental brief.

13        The first exhibit to Mr. Stockton's declaration is a May 2005 paper entitled, "U.S.

14   Nuclear Weapons Complex: Homeland Security Opportunities."  Plfs' Exh. 23 at 8.  The revised

15   EA for the LLNL BSL-3 facility was circulated for public comment in May 2007 – two years

16   after the report was published.  Plaintiffs thus had ample opportunity to present the May 2005

17   paper to the DOE during the public comment period on the LLNL BSL-3 EA.

18        In cases, such as this, where judicial review of an Agency's decision is based on the

19   administrative record considered by the agency,[3/] it is particularly inappropriate to submit to the

20   Court extra-record material that the plaintiff  had an opportunity to submit directly to the agency

21   during agency proceedings.  Participants in decision-making are obligated to "'structure their

22   participation so that it . . . alerts the agency to the [parties'] position and contentions,' in order to

23   allow the agency to give the issue meaningful consideration."  Dep't. of Transp. v. Public

24   Citizen, 541 U.S. 752, 764 (2004) (quoting Vermont Yankee Nuclear Power Corp. v. NRDC,

25   435 U.S. 519, 553 (1978)).  Absent "exceptional circumstances," where the agency afforded the

26   _____

27   [3/]    See Camp  v. Pitts, 411 U.S. 138, 142 (1973); Friends of the Earth v. Hintz, 800 F.2d 822,
     829 (9th Cir. 1986) ("The task of the reviewing court is to apply the appropriate APA standard of
28   review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the
     reviewing court.") (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985)).

1  public the opportunity to participate in the decision making process, plaintiffs have an obligation

2  to present their criticisms of a proposed project at that point.  See Havasupi Tribe v. Robertson,

3  943 F.2d 32, 34 (9th Cir. 1991); see also Wilson v. Hodel, 758 F.2d 1369, 1372-73 (10th Cir.

4  1985) (quoting United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 37 (1957)) ("Simple

5  fairness to those who are engaged in the tasks of administration, and to litigants, requires as a

6  general rule that courts should not topple over administrative decisions unless the administrative

7  body not only has erred but erred against objection made at the time appropriate under its

8  practice.").  Plaintiffs had the opportunity to bring the May 2005 paper to the DOE's attention

9  during the formal public comment period on the LLNL BSL-3 EA.  By opting to wait until after

10 the decision had been made to bring the report forward, Plaintiffs deprived the agency of the

11 opportunity "give the issue meaningful consideration," and have forfeited the right to bring the

12 issues raised in the report before this Court.  Public Citizen, 541 U.S. at 764.

13      Plaintiffs also attach to Mr. Stockton's declaration a March 2008 report entitled "U.S.

14 Nuclear Weapons Complex: Livermore Homes and Plutonium Make Bad Neighbors."  By

15 stipulation, the administrative record in this case was made available to Plaintiffs on April 11,

16 2008 [Dkt. No. 4], and any motion seeking to supplement the record was to be filed by May 9,

17 2008 [Dkt. No. 36].  If Plaintiffs believed the report was germane to the Court's review, they had

18 an opportunity and obligation to bring it forward in a motion to supplement the administrative

19 record by the May 9, 2008 deadline.  Plaintiffs failed to do so, and they should not now be

20 permitted to supplement the administrative record *de facto* by attaching the report to their

21 proposed supplemental brief.

22      Finally, Plaintiffs attach to Mr. Stockton's declaration an article from Time magazine and

23 an article from the Contra Costa Times.  Plfs' Exh. 25 and Exh. 26.  The admissibility of

24 newspaper or magazine articles is subject to a two-level hearsay inquiry: the Court must first

25 consider the admissibility of the out-of-court statement by the individual quoted in the article,

26 and then the admissibility of the reporter's transcription of that statement, which is itself an

27 implicit statement that "the individual I interviewed said this."  See Larez v. City of Los Angles,

28 946 F.2d 630, 642 (9th Cir. 1991).

1    Under this two-level hearsay inquiry the two articles submitted by Plaintiffs are plainly

2    inadmissible.  First, both articles rely heavily on statements from unidentified sources.  See e.g.,

3    Plfs' Exh. 25 at 1 ("according to TIME's sources," "said one senior congressional aide").

4    Statements by unidentified sources offered for the truth of the matter asserted are plainly

5    inadmissible hearsay.  Larez, 946 F.2d at 643, citing United States Football League v. Nat'l

6    Football League, No. 84-civ-7484 (PKL), 1986 WL 5803 (S.D.N.Y 1986).  The proffered

7    articles also contain statements from individuals not affiliated with LLNL or the DOE, such as

8    plaintiff Marylia Kelley.  See, e.g., Plfs' Exh. 25 at 2.  These out-of-court statements offered for

9    the truth of the matter asserted are also inadmissible hearsay.  Finally, the articles purport to

10   convey out-of-court statements by employees of  LLNL and DOE .  See, e.g., Plfs' Exh. 26 at 1.

11   While statements of a party-opponent may not be hearsay (Fed. R. Evid. 801(d)(2)(A)), the

12   repetition of those statements in newspaper articles is itself hearsay: "As the reporters never

13   testified nor were subjected to cross-examination, their transcriptions of [the party opponent's]

14   statements involve a serious hearsay problem."  Larez, 946 F.2d at 642.  Plaintiffs fail to

15   demonstrate that this out-of-court repetition of statements of DOE and LLNL employees is

16   subject to any exception to the hearsay rule.   Because the newspaper articles proffered by

17   Plaintiffs constitute inadmissible hearsay, they should be stricken if the Court determines to

18   accept Plaintiffs' supplemental brief.

19        **III.    CONCLUSION**

20        Plaintiffs' motion to file a supplemental brief should be denied.  This Court cannot

21   consider, in ruling on Plaintiffs' preliminary injunction motion, the legal claim raised in

22   Plaintiffs' proposed supplemental brief as that claim is not present in Plaintiffs' complaint.  Any

23   claim that the DOE has violated NEPA by not preparing a supplemental EA in response to the

24   security assessment will fail, as DOE has made a reasoned determination that a supplemental EA

25   is not necessary.  Finally, if the Court determines that the supplemental brief is acceptable, than

26   it should strike the Declaration of Peter Stockton and the attachments thereto on the evidentiary

27   grounds identified above.

28

1

Dated this 7th day of July, 2008.

2                                                    Respectfully submitted,
                                                     RONALD J. TENPAS
3                                                    Assistant Attorney General

4                                                     /s/ Barclay T. Samford
                                                     BARCLAY T. SAMFORD
5                                                    Trial Attorney
                                                     U.S. Department of Justice
6                                                    Environment & Natural Resources Division
                                                     1961 Stout Street, 8th Floor
7                                                    Denver, CO 80294

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





## U. S. Department of Energy
National Nuclear Security Administration
Livermore Site Office
PO Box 808, L-293
7000 East Avenue
Livermore, California 94551-0808

JUL 0 2 2008

5430
COR-LSO-7/2/2008-7741

MEMORANDUM FOR CAMILLE YUAN-SOO HOO
                MANAGER

FROM:           SAMUEL D. BRINKER
                DOCUMENT MANAGER

SUBJECT:        Review of the Relevance of the Office of Independent Oversight
                Security Assessment at Lawrence Livermore National Laboratory to the
                Biosafety Level 3 Environmental Assessment

The Health, Safety and Security (HSS) Office of Independent Oversight (OIO) recently
conducted a security inspection of Lawrence Livermore National Laboratory (LLNL). A Final
Report was issued on June 27, 2008, which includes findings indicating "significant weaknesses"
in the areas of the protective forces. The Final Security Report is Classified, so will not be
discussed in detail in this memorandum.

As part of my role as Document Manager for the Environmental Assessment (EA) for the
Construction and Operation of a Biosafety Level 3 (BSL-3) Facility at LLNL, I have reviewed
the Security Report to determine what relevance, if any, the findings could have on the terrorist
threat analysis in the BSL-3 EA and whether those findings constitute new information or
changed circumstances such that a supplemental EA or an Environmental Impact Statement
("EIS") should be prepared for the LLNL BSL-3 facility.

The Final EA for the LLNL BSL-3 reviews the threat to the facility from terrorists and the
potential environmental effects that might derive from various terrorist acts against the facility.
The terrorist acts considered and the conclusions for each are shown below.

> Scenario 1: A terrorist attack resulting in facility damage and loss of containment.
> Conclusion: *A successful terrorist attack involving facility damage and loss of
> containment is not expected to occur due to the extensive layered security programs at
> the LLNL; in any event, the environmental consequences would be bounded by the effects
> of the maximum credible event scenario included in the EA.*

> Scenario 2: A theft of pathogenic agent by a terrorist from outside of LLNL.
> Conclusion: *Because pathogenic agents are available in nature and hundreds of other
> less secure locations, operation of the LLNL BSL-3 facility would not make pathogenic*

Exh. 1

C. Yuan-Soo Hoo                                                                                                  2

> *agents more readily available to an outside terrorist, or increase the likelihood of an attack by an outside terrorist.*
>
> Scenario 3: A theft of pathogenic agent by an insider.
> Conclusion: *The theft of pathogenic materials by an insider from any biological research facility could have very serious consequences; this scenario is not expected to occur at LLNL due to human reliability programs, security procedures, and management controls at the LLNL BSL-3 Facility.*

The conclusion for Scenario 1 includes a discussion of LLNL's layered security program and states that the security program makes the probability of a successful terrorist attack very unlikely. However, the analysis in the Final EA does not rely on the assumption of effective security, but instead, in evaluating environmental impacts, assumes that a terrorist attack succeeds and facility damage resulting in a breach of containment occurs. The analysis demonstrates that the consequences of a malicious act leading to a breach in containment are bounded by the catastrophic event scenario evaluated in the EA. Because the effectiveness of the security force is not relied upon in reaching the conclusion that a terrorist attack resulting in a breach of containment will not result in significant impacts to the environment, the Security Report does not constitute significant new information that would require additional evaluation of Scenario 1 pursuant to National Environmental Protection Act (NEPA).

The conclusion for Scenario 2 is based in part on the fact that the pathogenic agents typically found in the LLNL BSL-3 can also be found and developed by a knowledgeable terrorist from natural sources. There is no reason to reconsider this point as a result of the Security Report.

The conclusion for Scenario 2 also partially relies on the assertion that there are "other, less secure locations…" from which to obtain the desired pathogenic materials. Because of this, I reviewed the description of the security of the facility which leads to the conclusion that it was more secure than other BSL-3 facilities.

The security for the facility and its comparison to other BSL-3 facilities is described in the following paragraphs taken from the EA.

> *When compared with other facilities and locations in the environment for which pathogenic agents could be obtained, the LLNL BSL-3 facility is one of the most physically secure against such efforts. Part 73 outlines minimum security requirements for possession and use of select agents and toxins. The key requirements are locking refrigerators and freezers to store select agents, and controlling access to areas where select agents and toxins are stored or used from the public areas of the building.*
>
> *Several aspects of the layered physical security systems at LLNL exceed the security requirements imposed by Part 73 on similar facilities. There are over 1350 of these facilities nationwide; the majority of which are either academic or clinical/diagnostic*

*facilities (GAO 2007). First, the LLNL site is surrounded by a patrolled security fence with badge-identification required for entry. The LLNL Protective Force Division provides numerous types of protection, including perimeter access control, fixed access and surveillance points, random vehicle patrols, and an armed response force. The Protective Force Division conducts periodic drills and training to maintain its effectiveness. In March 2004, Department of Energy's (DOE's) Office of Safeguards and Security Evaluations completed a comprehensive review of LLNL security programs and rated the protective force operations as "Effective Performance," which is the highest rating possible.*

*Building 368 is inside the LLNL protected perimeter. In addition, access to Building 368 is controlled by badge identification and limited to employees registered with Centers for Disease Control and Prevention for work with select agents, authorized by LLNL management, and enrolled in the Select Agent Human Reliability Program (HRP). (This program is discussed in Section 4.3.3) Access to individual laboratories is further controlled by an additional personal identification system to only those staff members approved for work during specific shifts. Building and laboratory access are continuously monitored. Finally, all points of access to the facility, including foundation and HVAC access point, have been physically secured against unauthorized entry. Motion detectors have also been installed in the laboratories and mechanical rooms. Within the facility's laboratories, all select agents are kept in locked freezers when not in use.*

From this section of the EA, the only statement potentially affected by the Final Security Report is this one: *"In March 2004, DOE's Office of Safeguards and Security Evaluations completed a comprehensive review of LLNL security programs and rated the protective force operations as "Effective Performance," which is the highest rating possible."* While the statement remains true, it could be considered misleading given the results of the more recent review, which identified critical issues with the protective force and as a result, the force was not rated as "Effective Performance" for this review cycle. However, the issues identified in the Security Report dealt primarily with security assets specifically provided for the protection of special nuclear material at LLNL. These assets are not relied upon to provide security to the BSL-3 facility. In other areas, the report identifies positive aspects of the protective force, including a well administered and functional training organization and appropriate levels of individual skills and knowledge as demonstrated in a series of performance tests. The report indicates that the physical security systems program exhibits effective performance in areas such as access control systems, Perimeter Intrusion Detection and Assessment System barriers and sensors, operational testing and maintenance practices, performance testing of exterior sensors, and badging operations. The report further states that the personnel security program and it's major elements, including personnel clearance, safeguards and security awareness, and the human reliability programs, are effectively managed and meeting DOE expectations. The report does not conclude that the Protective Force is unable to provide the level of protection to the BSL-3 facility discussed in the section, or provide any reason to question the facts contained in this

C. Yuan Soo-Hoo                                                                                    4

section of the EA. Therefore, the statement that there are other, less secure facilities from which to obtain pathogenic materials than the LLNL BSL-3 facility remains accurate and the Security

Report does not constitute significant new information requiring additional evaluation of this conclusion under NEPA.

The conclusions for Scenario 3 in the EA rely on the determination that an insider theft was highly unlikely due to the human reliability programs, security procedures, and management controls at the LLNL BSL-3 Facility. In general, the findings from the Security Report support the conclusion that these security assets are functioning in an effective manner at LLNL. As previously mentioned, the report indicates that the physical security systems program and the personnel security program and its major elements, including the HRP, are effectively managed and meeting DOE expectations. For these reasons, the conclusions for Scenario 3 are not affected by the Security Report, and no additional evaluation pursuant to NEPA is necessary.

Based on my analysis, I have concluded that the Final Security Report from the recent HSS OIO security inspection of LLNL does not provide any reason to reconsider the terrorist threat analysis in the BSL-3 EA.

Please let me know if you have any questions on this memorandum, or require additional detail.


_____X_____Concur            _____Do not concur


Camille Yuan-Soo Hoo
Manager

JOSEPH P. RUSSONIELLO
United States Attorney
CHARLES O'CONNOR
Assistant United States Attorney
450 Golden Gate Ave., Box 36055
San Francisco, CA 94102
Telephone: (415) 536-6967
Facsimile: (415) 436-6748

RONALD J. TENPAS
Assistant Attorney General
BARCLAY T. SAMFORD (NMBN 12323)
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Div.
1961 Stout St., 8th Floor
Denver, CO 80294
Telephone: (303) 844-1475
Facsimile: (303) 844-1350


Attorneys for Defendants

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| TRI-VALLEY CARES, MARYLIA KELLEY, JANIS KATE TURNER, and JEDIDJAH DE VRIES )<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF ENERGY, ) NATIONAL NUCLEAR SECURITY ADMINISTRATION, LAWRENCE LIVERMORE ) NATIONAL LABORATORY,<br><br>Defendants. | Case No. 08-cv-1372-SBA<br><br><br><br>DECLARATION OF Phillip E. Hill |

Exh. 2

I, Phillip E. Hill, hereby declare and state as follows:

1.      I am the Technical Deputy Manager for the National Nuclear Security Administration's Livermore Site Office at Lawrence Livermore National Laboratory (LLNL). I have held this position since December, 2003.

2.      As the Technical Deputy Manager, I am responsible for providing technical contract direction and operational oversight of the institutional environmental, safety and health programs to ensure the systems, processes, and procedures are effectively implemented by LLNL to protect the public, worker, and environment. In October, 2007, my responsibilities were expanded to include management and oversight of the LLNL safeguards and security program. In that capacity, I must ensure security risks are identified and mitigated as part of the vulnerability assessment process.

3.      As part of my duties, I am familiar with the Department of Energy's Office of Health, Safety and Security Inspection of Lawrence Livermore National Laboratory that was conducted at the facility in March and April of 2008.

4.      I have reviewed the Declaration of Peter D. H. Stockton in Support of Plaintiff's Motion for Leave to File a Supplementary Brief In Support of Plaintiff's Motion for Preliminary Injunction, wherein Mr. Stockton purports to describe the security assessment conducted in March and April of 2008. At the time Mr. Stockton provided his declaration, the preliminary results of the assessment had been presented in a classified draft report which had been issued on a limited basis within DOE and had not been issued outside of DOE. Mr. Stockton provides no

source for his assertions, and to my knowledge, no organization outside of DOE, including the Project on Government Oversight, had access to the draft report.

5.    A final report on the security assessment was issued on June 27, 2008.    The Report is classified and will not be released to the general public.

6.    While the security assessment remains classified, Mr. Stockton's generic assertion that the assessment is relevant to the security of the LLNL BSL-3 facility is unwarranted. The critical issues identified in the recent security assessment dealt primarily with security assets specifically for the protection of special nuclear material at Building 332, the plutonium facility. In my opinion, Mr. Stockton's attempts to generalize the results of the HSS Security exercise specifically tailored for the plutonium facility to the BSL-3 facility are inappropriate and without merit.

7.  I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed at Livermore, California, this 2nd day of July, 2008.

Phillip E. Hill

1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    OAKLAND DIVISION

4    TRI-VALLEY CARES, MARYLIA KELLEY,      )
     JANIS KATE TURNER, and                 )
5    JEDIDJAH DE VRIES,                      )        Case No. 08-cv-1372-SBA
                                             )
6                                            )
           Plaintiffs,                       )
7                                            )
     v.                                      )
8                                            )        [proposed] ORDER DENYING
     UNITED STATES DEPARTMENT OF ENERGY, )            PLAINTIFFS' MOTION FOR
9    NATIONAL NUCLEAR SECURITY               )        LEAVE TO FILE
     ADMINISTRATION, LAWRENCE LIVERMORE )             SUPPLEMENTAL BRIEF
10   NATIONAL LABORATORY,                    )
                                             )
11         Defendants.                       )
     _____)
12

13
           Before the Court is Plaintiffs' request for leave to file a supplemental brief.  For the
14
     reasons set forth below, Plaintiffs' motion is DENIED.
15
     **I.    BACKGROUND**
16
           On June 18, 2008 Plaintiffs filed a motion seeking leave to file a supplemental brief, as
17
     well as a new declaration and over 100 pages of additional exhibits in support of their motion for
18
     preliminary injunction.  Plaintiffs' supplemental brief asserts that DOE has violated the National
19
     Environmental Policy Act ("NEPA") by failing to prepare a supplemental EA for the LLNL
20
     BSL-3 facility to address a security assessment conducted at LLNL in March-April 2008 by the
21
     DOE's Office of Independent Oversight.
22

23   **II.   DISCUSSION**

24         **A.    Plaintiffs May Not Seek a Preliminary Injunction Based on a Claim Not
                   Raised in Their Complaint.**
25
           Plaintiffs assert that their proposed supplemental brief is filed in support of their pending
26
     motion for a preliminary injunction.  Plaintiffs' proposed supplemental brief, however, does not
27
     support any of the existing claims in their complaint, and instead attempts to proffer an entirely
28

     [proposed] Order Denying Plfs' Mot. for Leave to File Supp. Br. - 08-cv-1372-SBA

1   new claim.  Because this Court may not award injunctive relief on the basis of claim not

2   included in a complaint, Plaintiffs' motion for leave to file a supplemental brief is inappropriate.

3          To obtain a preliminary injunction, a plaintiff must demonstrate irreparable harm, and a

4   chance of success on the merits of its legal claims.  Stuhlbarg Int'l Sales Co., Inc. v. John D.

5   Brush and Co., Inc., 240 F.3d 832, 839-40 (9th Cir. 2001).  If a legal claim is not raised in a

6   plaintiff's complaint, it will not be reviewed on the merits, and it would be inappropriate to

7   review the claim's "chance of success" in the context of a preliminary injunction.  See, e.g.,

8   Stewart v. United States INS, 762 F.2d 193, 199 (2d Cir. 1985) (finding district court erred in

9   issuing preliminary injunction based on claim not raised in complaint); First Health Group Corp.

10  v. Nat'l Prescription Adm'rs, Inc., 155 F. Supp. 2d 194, 233 n. 10 (M.D. Pa. 2001) ("This Court

11  will not award a preliminary injunction on grounds not raised in the complaint, as there is, by

12  virtue of the absence of the issue from the complaint, no likelihood of success on the merits.").

13         Here, Plaintiffs assert that their proposed supplemental brief provides information

14  "relevant" to their third claim for relief, which alleges DOE was required to supplement the EA

15  to address new information.  The complaint identifies the new information allegedly not

16  considered as: an incident involving the shipment of anthrax between labs (Dkt. No. 1 ¶¶ 57-62),

17  reports of accidents at BSL-3 and BSL-4 facilities in the U.S. (id. at ¶¶ 63-64), and a

18  Government Accountability Office Report (id. at ¶¶ 65-66).  Plaintiffs' complaint does not

19  include a claim for failure to supplement the BSL-3 EA to address the recent security

20  assessment.  Nor could it, because the security assessment had not taken place at the time the

21  complaint was filed.  Even under the liberal rules of notice pleading, Plaintiffs third claim does

22  not operate as an open door through which they may continually bring before the Court new

23  allegations based on events which had not occurred at the time the complaint was filed.  If

24  Plaintiffs believe a claim lies for failure to supplement the EA for LLNL BSL-3 on the basis of

25  the recent security assessment, the proper course is to move to amend their complaint to add

26

27

28

1  such a claim.[1]/

2       **B.**    **Assuming Arguendo that Plaintiffs' Supplemental Brief Relates to a Claim Already Before the Court, the Declaration of Peter Stockton, all Exhibits Thereto are Inadmissible.**

3

4       In support of their supplemental brief, Plaintiffs submit a new declaration and more than

5  100 pages of exhibits.  Although this Court declines to accept Plaintiffs' supplemental brief, it

6  notes that the declaration and the exhibits are inadmissible.

7                 **1.**    **The Declaration of Peter Stockton**

8       Plaintiffs submit the declaration of Peter Stockton for the apparent purpose of reporting

9  the results the security assessment conducted in March-April 2008 by the DOE's Office of

10  Health, Safety and Security.  The declaration is not admissible for that purpose.

11       The rules of this Court provide that an affidavit "may contain only facts, must conform as

12  much as possible to the requirements of FRCivP 56(e), and must avoid conclusions and

13  argument."  Civil L.R. 7-5(b).  Rule 56(e) provides that "[a] supporting or opposing affidavit

14  must be made on personal knowledge, set out facts that would be admissible in evidence, and

15  show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).

16  Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir.2001) (noting it is an abuse of

17  discretion to consider affidavits that are not made on personal knowledge, since such affidavits

18  do not set forth facts that would be admissible in evidence).

19       Contrary to Rule 56(e), Mr. Stockton's declaration fails to establish that he has personal

20  knowledge of the events about which he testifies.  This omission is not a mere deficiency in

21

22  [1]/       Plaintiffs' suggestion that their supplemental brief ought to considered in support of their
motion for a preliminary injunction is further undercut by that fact that an agency is not required to

23  stop ongoing operations authorized under an existing NEPA document while considering new
information – nor for that matter while preparing a supplemental NEPA document. See ONRC

24  Action v. BLM, 150 F.3d 1132, 1140 (9th Cir. 1998) (holding the BLM could continue to operate
under existing NEPA and program plans while preparing a new NEPA analysis that would "likely"

25  lead to revision of the program plan).  This rule comports with commonsense: it would be
debilitating to on-going agency programs if an agency were required to stop operations every time

26  allegedly significant new information was brought to its attention.  Here, operations at the BSL-3
facility began on January 25, 2008, and it would make little sense to shut down the facility every

27  time the Agency considers new information that may arise during the operational life of the facility.

28

[proposed] Order Denying Plfs' Mot. for Leave to File Supp. Br. - 08-cv-1372-SBA

1  drafting:  there is serious reason to doubt that Mr. Stockton, who is not a DOE employee and

2  who was not involved in the security assessment, could have competent personal knowledge of

3  the results of the assessment.  At the time of his declaration, only a classified draft of a report on

4  the security assessment had been produced, and that document was not made available to Mr.

5  Stockton or his organization.

6       Rather than personal knowledge, Mr. Stockton bases his testimony on the content of

7  "POGO's investigation."  See, e.g., id. at ¶¶ 4, 6, 8. Tellingly, Mr. Stockton neither attaches a

8  copy of  "POGO's investigation," or explains how it was conducted.  Testimony attempting to

9  convey to the Court the content of a document not before the Court is hearsay, and is

10 inadmissable.  Fed. R. Evid. 801(a).

11      Because Mr. Stockton fails to establish this his testimony is made on the basis of his

12 personal knowledge and because it is in large part inadmissible hearsay, Mr. Stockton's

13 declaration is inadmissible.

**2.       The Attachments to Mr. Stockton's Declaration**

14

15      The first exhibit to Mr. Stockton's declaration is a May 2005 paper entitled, "U.S.

16 Nuclear Weapons Complex: Homeland Security Opportunities."  Plfs' Exh. 23 at 8.  The revised

17 EA for the LLNL BSL-3 facility was circulated for public comment in May 2007 –two years

18 after the report was published.  Plaintiffs thus had ample opportunity to present the May 2005

19 paper to the DOE during the public comment period.

20      In cases, such as this, where judicial review of the Agency's decision is based on the

21 administrative record considered by the agency,[2]/ it is particularly inappropriate to submit to the

22 Court extra-record material that the plaintiff  had an opportunity to submit directly to the agency

23 during agency proceedings.  Participants in decision-making are obligated to "'structure their

24 participation so that it . . . alerts the agency to the [parties'] position and contentions,' in order to

25

26 [2]/    See Camp  v. Pitts, 411 U.S. 138, 142 (1973); Friends of the Earth v. Hintz, 800 F.2d 822,
   829 (9th Cir. 1986) ("The task of the reviewing court is to apply the appropriate APA standard of
27 review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the
28 reviewing court.") (quoting Florida Power & Light Co.v. Lorion, 470 U.S. 729, 743-44 (1985))

1   allow the agency to give the issue meaningful consideration." Dep't. of Transp. v. Public

2   Citizen, 541 U.S. 752, 764 (2004) (quoting Vermont Yankee Nuclear Power Corp. v. NRDC,

3   435 U.S. 519, 553 (1978)). Absent "exceptional circumstances," where the agency afforded the

4   public the opportunity to participate in the decision making process, plaintiffs have an obligation

5   to present their criticisms of a proposed project at that point. See Havasupi Tribe v. Robertson,

6   943 F.2d 32, 34 (9th Cir. 1991); see also Wilson v. Hodel, 758 F.2d 1369, 1372-73 (10th Cir.

7   1985) (quoting United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 37 (1957)) ("Simple

8   fairness to those who are engaged in the tasks of administration, and to litigants, requires as a

9   general rule that courts should not topple over administrative decisions unless the administrative

10  body not only has erred but erred against objection made at the time appropriate under its

11  practice."). Plaintiffs had the opportunity to bring the May 2005 paper to the DOE's attention

12  during the formal public comment period. By opting to wait until after the decision had been

13  made to bring the report forward, Plaintiffs deprived the agency of the opportunity "give the

14  issue meaningful consideration," and have forfeited the right to bring the issues raised in the

15  report before this Court. Public Citizen, 541 U.S. at 764. The Court concludes that the May

16  2005 paper is inadmissible

17      Plaintiffs also attach to Mr. Stockton's declaration a March 2008 report entitled "U.S.

18  Nuclear Weapons Complex: Livermore Homes and Plutonium Make Bad Neighbors." By

19  stipulation, the administrative record in this case was made available to Plaintiffs on April 11,

20  2008 [Dkt. No. 4], and any motion seeking to supplement the record was to be filed by May 9,

21  2008 [Dkt. No. 36]. If Plaintiffs believed the report was germane to the Court's review, they had

22  an opportunity and obligation to bring it forward in a motion to supplement the administrative

23  record by the May 9, 2008 deadline. Plaintiffs failed to do so, and they should not now be

24  permitted to supplement the administrative record *de facto* by attaching the report to their

25  proposed supplemental brief. The Court concludes that the March 2008 Report is inadmissible.

26      Finally, Plaintiffs attach to Mr. Stockton's declaration an article from Time magazine and

27  an article from the Contra Costa Times. Plfs' Exh. 25 and Exh. 26. The admissibility of

28  newspaper or magazine articles is subject to a two-level hearsay inquiry: the Court must first

[proposed] Order Denying Plfs' Mot. for Leave to File Supp. Br. - 08-cv-1372-SBA

1   consider the admissibility of the out-of-court statement by the individual quoted in the article,

2   and then the admissibility of the reporter's transcription of that statement, which is itself an

3   implicit statement that "the individual I interviewed said this."  See Larez v. City of Los Angles,

4   946 F.2d 630, 642 (9th Cir. 1991).

5          Under this two-level hearsay inquiry the two articles submitted by Plaintiffs are

6   inadmissible.  First, both articles rely heavily on statements from unidentified sources.  See e.g.,

7   Plfs' Exh. 25 at 1 ("according to TIME's sources," "said one senior congressional aide").

8   Statements by unidentified sources offered for the truth of the matter asserted are plainly

9   inadmissible hearsay.  Larez, 946 at 643, citing United States Football League v. Nat'l Football

10  League, No. 84-civ-7484 (PKL),1986 WL 5803 (S.D.N.Y 1986).  The proffered articles also

11  contain statements from individuals not affiliated with LLNL or the DOE, such as plaintiff

12  Marylia Kelley.  See, e.g., Plfs' Exh. 25 at 2.  These out-of-court statements offered for the truth

13  of the matter asserted are also inadmissible hearsay.  Finally, the articles purport to convey out-

14  of-court statements by employees of  LLNL and DOE .  See, e.g., Plfs' Exh. 26 at 1.  While

15  statements of a party-opponents may not be hearsay (Fed. R. Evid. 801(d)(2)(A)), the repetition

16  of those statements in newspaper articles is itself hearsay: "As the reporters never testified nor

17  were subjected to cross-examination, their transcriptions of [the party opponent's] statements

18  involve a serious hearsay problem."  Larez, 946 F.2d at 642.  Plaintiffs fail to demonstrate that

19  this out-of-court repetition of statements of DOE and LLNL employees is subject to any

20  exception to the hearsay rule.  Because the newspaper articles proffered by Plaintiffs constitute

21  inadmissible hearsay, the Court concludes that they are inadmissible.

22  **III.    CONCLUSION**

23          For the reasons set forth above, the Court finds that Plaintiffs motion leave to file a

24  supplemental brief is therefore DENIED.

25          IT IS SO ORDERED.

26

27  Dated:                                    _____
                                              SAUNDRA BROWN ARMSTRONG
28                                            United States District Judge

[proposed] Order Denying Plfs' Mot. for Leave to File Supp. Br. - 08-cv-1372-SBA