**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

TRI-VALLEY CARES, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF ENERGY, *et al.*,

Defendants.

No. C 08-01372 SBA

**ORDER**

[Docket No. 42]

**REQUEST BEFORE THE COURT**

Before the Court is Plaintiffs' Motion for Leave to File Supplemental Brief (the "Motion") [Docket No. 42], defendants' Memorandum in Opposition (the "Opposition") [Docket No. 46], and Plaintiff's Reply (the "Reply") [Docket No. 51]. Plaintiffs seek leave of Court to file a supplemental brief in support of their Amended Motion for a Preliminary Injunction (the "Amended Motion") [Docket No. 13]. Specifically, plaintiffs seek to supplement the portion of their request for a preliminary injunction, which is predicated on the third claim of their Complaint [Docket No. 1], with information regarding events which occurred in March and April 2008. The Court having reviewed the parties' pleadings, finds this matter appropriate for resolution without a hearing under Federal Rule of Civil Procedure 78(b). As discussed below, the Court DENIES the Motion because the third claim alleges defendants failed to supplement a draft Revised Environmental Assessment (the "REA") issued in May 2007, prior to defendants issuing a Final Revised Environmental Assessment (the "FREA") in January 2008. As such, plaintiffs may not now allege defendants failed to supplement the REA with information regarding events which occurred after the FREA was issued.

**BACKGROUND**

The facts of this matter are detailed, complex, and lengthy, but well-known to the parties, so the Court will not repeat them here. The Court will instead state the facts directly relevant to plaintiff's Motion. This is plaintiffs' second suit, under the National Environmental Policy Act of

1969 (the "NEPA"), 42 U.S.C. § 4321 *et seq.*, to prevent defendants from operating a biosafety level-3 ("BSL-3") facility at the Lawrence Livermore National Laboratory ("LLNL") in Livermore, California. In December 2002, the United States Department of Energy (the "DOE") issued an initial Environmental Assessment (the "EA") for the BSL-3 facility, concluding it would have no significant impact on the environment, and thus also issued a Finding of No Significant Impact ("FONSI"). *See* Docket No. 12, Ex. "1" at ii ("FREA").

On August 26, 2003, plaintiffs[1] sued defendants in this Court, under the NEPA, challenging the EA on numerous grounds, in *Tri-Valley Cares v. U.S. Department of Energy*, No. C 03-3926-SBA, 2004 WL 2043034, 2004 U.S. Dist. LEXIS 18777 (N.D. Cal. Sep 10, 2004). *See* Docket No. 1 in case 03-03926 SBA. On September 10, 2004, this Court granted summary judgment for the DOE and denied summary judgment for plaintiffs. *Tri-Valley Cares*, 2004 WL 2043034 at *1, 2004 U.S. Dist. LEXIS 18777 at *3-*4. On appeal, the Ninth Circuit noted the EA failed to consider the environmental impact of a terrorist attack. *Tri-Valley Cares v. Dep't of Energy*, 203 Fed.Appx. 105, 107 (9th Cir. 2006). It thus affirmed in part and reversed in part, remanding for the DOE to consider whether the threat of a terrorist act required the preparation of an Environmental Impact Statement ("EIS"). *Id.* at 106-07.

On remand, on May 11, 2007, the DOE circulated the REA[2] for public comment which considered the impacts potentially associated with terrorist attacks. Compl. ¶ 44; FREA at ii. On October 5, 2007, the DOE released information regarding two 2005 incidents involving shipments of anthrax vials from LLNL to facilities in Florida and Virginia. Compl. ¶¶ 57-59. On October 29, 2007, plaintiffs sent a letter to defendants urging the "DOE to further revise or supplement the draft EA . . . [and] maintained the draft EA or a supplement thereto should then be circulated for public comment because . . . the draft EA" was "inadequate and incomplete" and "the draft EA failed to disclose" numerous vital details regarding these incidents. Compl. ¶ 60.

---

[1] Not all the plaintiffs in the first suit are plaintiffs in the current suit, as those who were involved in a separate action related to the Los Alamos National Laboratory which has been resolved, have not joined the latter. *See* Docket No. 177 in case 03-3926 at 2:18-3:5. And, there is a new plaintiff in this matter, Jedidjah De Vries. *Id.*

[2] Plaintiffs refer to the REA as the "draft EA." Compl. ¶ 44.

In this same letter, plaintiffs "pointed out that recent reports have shown that BSL-3 and BSL-4 laboratories in the United States have experienced more than 100 accidents and missing shipments since 2003, a number that is rising steadily as more of these facilities are built." *Id.* ¶ 63. And, in this letter, plaintiffs "directed Defendants' attention to a report by the Government Accountability Office [the "GAO"] documenting a major proliferation of BSL-3 laboratories in recent years." *Id.* ¶ 65.[3]

On January 25, 2008, after evaluating public comment, the DOE found no significant environmental impact would result from a terrorist attack on the BSL-3 laboratory, and issued the FREA[4] and a FONSI. *See* Compl. ¶ 47; Opp'n at 5:25; *see* FREA and Docket No. 12, Ex. "4." The BSL-3 operations at the facility began this same day. Compl. ¶¶ 32, 47.

On March 10, 2008, plaintiffs filed their Complaint in this matter. *See* Docket No. 1. In it, they raised four claims. *See id.* For their third claim, plaintiffs alleged defendants failed to supplement the draft REA prior to circulation, as required by 10 C.F.R. § 1021.314(a) and 40 C.F.R. § 1502.9(c)(1)(ii). *See* Compl. ¶ 56. In their introduction, plaintiffs state:

> Defendants failed to prepare a supplement to the EA, as required under applicable regulations implementing NEPA, to account for significant new circumstances and information that came to light during the decisionmaking [sic] process for the proposed BSL-3 facility. . . . Because Defendants are currently operating the proposed BSL-3 facility at Livermore Lab, Plaintiffs seek an injunction-including interim injunctive relief . . . .

Compl. ¶¶ 1-2.

In the body of their Complaint plaintiffs' discussion regarding their third claim focuses entirely on their October 2007 letter to defendants requesting them to supplement the REA regarding the two 2005 anthrax shipping incidents, the report regarding the alleged 100 BSL accidents since 2003, and the GAO report. *Id.* ¶¶ 60, 63-66. Plaintiffs note defendants addressed these issues, the

---

[3] Both the accident reports and the GAO report were created in October 2007. Amend. Mot. at 26-28.

[4] Plaintiffs refer to the FREA as the "final EA." Compl. ¶ 47.

latter two rather cursorily, in the FREA, but the FREA was not circulated for public comment. *Id.* Then, in "Count 3: Failure to Supplement," plaintiffs simply state:

> 78. Plaintiffs incorporate by reference all proceeding paragraphs.
>
> 79. In violation of applicable federal regulations implementing NEPA, Defendants have *failed to prepare a supplement to the EA* in response to significant new circumstances and information relevant to the environmental impacts of the proposed BSL-3 facility.
>
> 80. Defendants' *failure to prepare a supplement to the EA* for the proposed BSL-3 facility is arbitrary and capricious, an abuse of discretion, or contrary to law and constitutes a violation of the APA and NEPA.

*Id.* ¶¶ 78-80 (emphasis added).

On March 26, 2008, plaintiffs filed their Amended Motion seeking a preliminary injunction on the grounds they were likely to prevail on the merits of their claims, and the balance of hardships tipped sharply in their favor. Amend. Mot. at 2:3-7. On June 5, 2008, plaintiffs filed a Request for Judicial Notice [Docket No. 40], regarding a one-page May 9, 2008 press release issued by defendant National Nuclear Security Administration. *See* Docket No. 40. On June 9, 2008, the Court denied this request as the release was irrelevant to this matter. *See* Docket No. 41. In denying this request, the Court noted it had taken the Amended Motion under submission and did "not require any supplemental pleadings." *See id.*

Nonetheless, nine days later, plaintiffs filed the Motion, seeking leave of Court to file supplemental pleadings.[5] Plaintiffs claim leave is critical to the Court disposing of their request for a preliminary injunction on the third claim of their Complaint. Mot. at 2:10-27. Specifically, plaintiffs wish to supplement their Amended Motion with information regarding security drills which took place at the LLNL in March and April 2008. *Id.* at 2:20-26, 3:1-5; Opp'n at 1:13-16. Plaintiffs allege the new information speaks to the question of whether or not defendants failed to

---

[5] This same day, June 16, 2008, plaintiffs' counsel sent an e-mail to defendants' counsel, asking if they would oppose the Motion, and received an automated response that counsel would be out of his office from June 16 through 20, 2008. Mot. at 4.

prepare a supplement to the final Revised Environmental Assessment[,]" because there were alleged security failures in the drills which invalidate assumptions in the FREA. Mot. at 2:10-25.

In Opposition, defendants argue that plaintiffs have requested leave to supplement on the grounds that defendants failed to supplement the *FREA*, but plaintiffs' Complaint only alleges that defendants failed to supplement the *REA*. Opp'n at 1:11-19, 2-3. Defendants further argue plaintiffs may not request leave to supplement a request for a preliminary injunction with a claim they did not raise in their Complaint, as they cannot show they are likely to prevail on the merits of any claims not raised in their Complaint. *Id.*

In Reply, plaintiffs concede they failed to raise the issue of the security drills in their Complaint, as they had not yet happened. Reply at 4:7-9. But, they argue, their third claim clearly alleges defendants failed to prepare a supplement to the FREA. Reply at 2:3-10, 2:24 - 3:1. And for support, they point to a lone sentence in their Complaint stating, "Defendants have failed to prepare a supplement to the EA . . . ." *Id.* at 3:17-20 (citing Compl. ¶ 79).

## LEGAL STANDARD

### I. Preliminary Injunctions under Federal Rule of Civil Procedure 65

Federal Rule of Civil Procedure 65 permits the issuance of a preliminary injunction, the purpose of which is to preserve the relative positions of the parties until a trial on the merits can be conducted. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006); *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006). A party seeking a preliminary injunction must show either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Faith Ctr. Church Evangelistic Ministries v. Glover*, 462 F.3d 1194, 1201-02 (9th Cir. 2006), *amended and superseded on denial of reh'g by* 480 F.3d 891 (9th Cir. 2007), *cert. denied*, 128 S.Ct. 143 (2007). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *LGS Architects*, 434 F.3d at 1155; *see also Harper v. Poway Unified Sch. Dist.*, 445 F.3d 1166, 1174 (9th Cir. 2006) (the greater the relative hardship to the moving party, the less probability of success must be shown to support the grant of a preliminary injunction).

**II.    Supplementing an Environmental Assessment under the NEPA**

The standard for supplementing an EA is the same as for an EIS. *Idaho Sporting Cong., Inc. v. Alexander*, 222 F.3d 562, 566 n.2 (9th Cir. 2000). As the Supreme Court has held, "an agency need not supplement an EIS every time new information comes to light after the EIS is finalized. To require otherwise would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 373 (1989) (footnote omitted). "On the other hand, . . . NEPA does require that agencies take a 'hard look' at the environmental effects of their planned action, even after a proposal has received initial approval." *Id.* at 374-75. And, as the Ninth Circuit has held, "a federal agency has a continuing duty to gather and evaluate new information relevant to the environmental impact of its actions." *Warm Springs Dam Task Force v. Gribble*, 621 F.2d 1017, 1023 (9th Cir. 1980) (citing 42 U.S.C. § 4332(2)(A), (B)).

Whether or not to supplement is governed by the same standard which applies to preparing an initial EIS, that is: (1) whether or not there remains a "major federal action" to occur; and (2) "if the new information is sufficient to show that the remaining action will 'affec[t] the quality of the human environment' in a significant manner or to a significant extent not already considered . . . ." *Marsh*, 490 U.S. at 375 (quoting 42 U.S.C. § 4332(2)(C)); *see also* 40 C.F.R. § 1502.9(c)(1)(ii);[6] 10 C.F.R. § 1021.314(a).[7]

**III.    The Court's Meet-and-Confer Requirement**

Paragraph 5 of the Court's Standing Order for Civil Trials mandates all parties meet and confer before filing any motions.

///

///

---

[6]    This subdivision states, "(c) Agencies: [¶] (1) Shall prepare supplements to either draft or final environmental impact statements if: [¶] . . . [¶] (ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1)(ii).

[7]    This subdivision states, the "DOE shall prepare a supplemental EIS if there are substantial changes to the proposal or significant new circumstances or information relevant to environmental concerns, as discussed in 40 CFR 1502.9(c)(1)." 10 C.F.R. § 1021.314(a).

## ANALYSIS

For the following two separate and independent reasons, the Court DENIES plaintiffs' Motion.

**I. Plaintiffs may not supplement their Amended Motion for a preliminary injunction with a claim they did not raise their Complaint.**

As the Ninth Circuit has held, the purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits. *E. & J. Gallo Winery*, 446 F.3d at 990. Thus, a party seeking one must show either a probable success on the merits or that serious questions are raised. *Faith Ctr. Church*, 462 F.3d at 1201-02. In other words, a party seeking a preliminary injunction must demonstrate a likelihood of prevailing on their case in chief. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 n.3 (9th Cir. 2001). As such, plaintiffs may not supplement their Amended Motion for a preliminary injunction with a claim they did not raise their Complaint, because logically speaking, they could not prevail on its merits at trial.

In their Motion, plaintiffs ask to supplement their Amended Motion with information regarding security drills at LLNL in *March and April 2008*. They further assert this information speaks to their third claim as to whether defendants failed to supplement the *January 2008 FREA*. An examination of the language of plaintiffs' Complaint, however, and the law governing the supplementation of EAs, shows plaintiffs' third claim alleges defendants failed to supplement the *REA*, but fails to allege defendants failed to supplement the *FREA*. As such, plaintiffs cannot supplement their Amended Motion with information regarding defendants' alleged failure to supplement the FREA.

Looking first at the language of plaintiffs' Complaint, the third claim consists *entirely* of a discussion about plaintiffs' October 2007 letter. In this letter to defendants, plaintiffs ask them to supplement the *May 2007 REA* with information released by the DOE in October 2007 and with information regarding two October 2007 reports regarding BSLs, and then circulate it for public comment. In this discussion, plaintiffs repeatedly use the term "draft EA." They do not reference the FREA, or as they refer to it elsewhere in their Complaint, the "final EA."

///

In their Reply, however, plaintiffs argue their third claim requested defendants to supplement the *FREA*, because under the "Count 3" heading of their Complaint, they stated that defendants "failed to prepare a supplement to the EA[.]" Reply at 3:17-20 (citing Compl. ¶ 79). The Court finds term "EA" ambiguous, however. The Court also finds it neither contradicts plaintiffs' more specific use of "draft EA," in discussing the third claim, nor reads it as synonymous with the term "final EA." And, the Court notes plaintiffs used this term in their introduction, alleging defendants failed to supplement "the EA . . . [with] information that came to light during the decision making process[,]" *before* the facility commenced operation the same day *the FREA was issued*.[8] Thus, the Court finds the language of plaintiffs' third claim alleges defendants failed to supplement the *REA*, but does not allege defendants failed to supplement the *FREA*.

Nor could the Court find otherwise, under the law governing the supplementation of EAs, as it only requires supplementation for events or disclosures which occur *after an EA has been issued*, and not before. As the Supreme Court has held, "an agency need not supplement an [EA] every time *new* information comes to light *after the [EA] is finalized*." *Marsh*, 490 U.S. at 373. But, as the Ninth Circuit holds, an agency has an *ongoing* duty to "gather and evaluate *new information* relevant to the environmental impact of its actions. *Warm Springs*, 621 F.2d at 1023. Likewise, under 10 C.F.R. § 1021.314(a), the "DOE shall prepare a supplemental [EA] if there are substantial changes to the proposal or significant *new circumstances or information* relevant to environmental concerns, as discussed in 40 CFR 1502.9(c)(1)." (Emphasis added.) And, under 40 C.F.R. § 1502.9(c)(1)(ii), an agency shall supplement a draft or final EA, if "[t]here are significant *new circumstances or information* relevant to environmental concerns and bearing on the proposed action or its impacts." (Emphasis added.) Rather clearly, while the law contemplates supplementing an *existing* EA with information regarding disclosures or events which occur *after* its issuance, the law does not

///

---

[8] The Court notes plaintiffs titled the discussion of their third claim in their Complaint as "Significant New Circumstances and Information Require Supplementation of the Final EA[.]" Compl. at 16:1. The title by itself, however, cannot controvert plaintiffs' entire discussion which clearly focuses solely on the supplementing the REA. Further, as discussed below, the law governing supplementation of EAs prevents defendants from supplementing the FREA with disclosures made prior to its issuance, as opposed to after.

contemplate supplementing an *existing* EA with information regarding disclosures or events which occur *before* its issuance.[9]

In this case, plaintiffs argue in their Motion that their third claim alleges defendants failed to supplement the FREA. The REA was circulated for public comment in May 2007. Plaintiffs sent a letter to defendants in October 2007 asking them to supplement the REA with October 2007 information, and then to re-circulate the REA. Instead, defendants discussed the October 2007 information in the FREA, and issued it in January 2008. Plaintiffs then filed their Complaint in March 2008. In their Motion, plaintiffs make no attempt to explain how, under the law governing the supplementation of EAs, they could have alleged in their Complaint that defendants failed to "supplement" the *January 2008 FREA*, with information which was "new" in *October 2007*, but which was "old" in *January 2008*. While plaintiffs might take issue with how defendants analyzed the October 2007 information in the FREA, this would not be equivalent to alleging they failed to "supplement" the FREA with this information. Thus, based on the law governing the supplementation of EAs, plaintiffs' third claim may not allege defendants failed to supplement the FREA with "new" information from October 2007.

In conclusion, the language of plaintiff's third claim shows they allege that defendants failed to supplement the REA. But, the language does not show they alleged that defendants failed to supplement the FREA. Nor does the law governing the supplementation of EAs allow plaintiffs to allege that defendants failed to supplement the January 2008 FREA with information newly discovered in October 2007. Thus, because plaintiffs failed to allege this claim in their Complaint, they cannot prevail on its merits at trial. As a result, this Court may not grant them leave to supplement their Amended Motion for a preliminary injunction with information related to this non-existent claim. The Court thus DENIES the Motion.

///

9 Nor is the Court certain it is logically or semantically possible for an agency to "supplement" an EA prior to its issuance, as there would be nothing to supplement. While there could be situations where events or disclosures occur very close in time prior to the issuance of an EA, such that the EA requires supplementation because the new information could not be included in the EA without delaying it issuance, this matter does not involve one of these situations.

**II. Plaintiffs failed to meet and confer with defendants prior to filing the Motion.**

As a separate and independent basis for denying the Motion, the Court holds plaintiffs failed to meet and confer with defendants prior to filing the Motion. Paragraph 5 of the Court's Standing Order for Civil Trials mandates all parties meet and confer before filing any motions. Here, plaintiffs' counsel declares that on June 16, 2008, he sent an e-mail to defendants' counsel, asking if they would oppose the Motion, and received an automated response that defendants' counsel would be out of his office from June 16 through 20, 2008. Mot. at 4. For this reason, plaintiffs' counsel alleges he could not obtain a stipulation. *Id.* Plaintiffs filed the Motion the same day the e-mail was sent. In their pleadings, plaintiffs make no attempt to explain why they filed the Motion without waiting for opposing counsel to return to his office. Further, the Court notes the terms "meet and confer" mean a movant must make a good faith and reasonable effort to actually meet and confer with all other parties before filing a motion. This requirement is designed to save the parties time and money in adversarial proceedings, and expedite the Court's docket, thus saving government resources. Here, plaintiffs did not even come close to making a good faith and reasonable effort to meet and confer. As a result, the Court DENIES the Motion.

**CONCLUSION**

Accordingly, the Court DENIES Plaintiffs' Motion for Leave to File Supplemental Brief [Docket No. 42].

IT IS SO ORDERED.

July 25, 2008

Saundra B. Armstrong

Saundra Brown Armstrong
United States District Judge